# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

GLENN McCLOUD,         )
                            )
     Movant,         )
                            )
v.                     )     Case No. CV407-153
                            )            [CR405-018]
UNITED STATES OF AMERICA,  )
                            )
     Respondent.     )

## <u>REPORT AND RECOMMENDATION</u>

Glenn McCloud has moved to vacate, set aside, or correct his federal prison sentence under 28 U.S.C. § 2255. (Doc. 1.)[1] The government opposes his motion. (Doc. 7.) For the following reasons, his motion should be **DENIED**.

## I. BACKGROUND

On February 16, 2005, the government, by information, charged McCloud with one count of distribution of cocaine. (Cr.

---

[1] Unless otherwise noted, citations are to the docket in movant's civil case, CV407-153. "Cr. Doc." refers to documents filed under movant's criminal case, CR405-018.

Doc. 1.)  McCloud pled guilty to that count on April 28, 2005.  (Cr. Doc. 4.)  On May 2, 2005, McCloud was sentenced to 240 months' imprisonment, five years' supervised release, and a $20,000 fine. (Cr. Doc. 5.)

McCloud appealed, contending that the district court erred by "enhancing his sentence based on facts that were neither admitted by him nor proven to a jury under the mandatory guidelines system" and by erroneously applying the guidelines as mandatory rather than advisory.  United States v. McCloud, 2005 WL 3199266, at *1 (11th Cir. Nov. 30, 2005).  The Eleventh Circuit affirmed his sentence.  Id.  The United States Supreme Court denied his petition for certiorari on October 10, 2006.  (Doc. 2 at 5.)

## II. ANALYSIS

McCloud timely filed his § 2255 motion on October 9, 2007. (Doc. 1.)  He alleges that his trial counsel performed ineffectively by failing to object to:  (1) the sentencing court's imposition of a term of supervised release which exceeded the term the court advised him of during the Rule 11 hearing, and (2) the sentencing

court's imposition of a fine which exceeded the fine recommended in the presentence investigation report. (Doc. 2 at 10-15.) He asserts that his appellate attorney performed ineffectively by: (1) failing to object to the sentencing court's imposition of a fine which exceeded the fine recommended in the presentence investigation report; (2) failing to order suppression hearing transcripts and failing to litigate the denial of his suppression motion; (3) failing to assist him in his efforts to provide substantial assistance to the government in order to obtain a Rule 35(b) sentencing reduction; and (4) laboring under a conflict of interest. (Id. at 15-35.) Finally, McCloud asserts that he should be resentenced, as his sentence was based on unconstitutionally obtained prior convictions that he is currently attacking in state proceedings. (Id. at 32-33.)

## A. Ineffective Assistance of Counsel Claims

Brown raises two claims of ineffective assistance of trial counsel and four claims of ineffective assistance of appellate counsel. To establish ineffective assistance of counsel, he must satisfy the two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). First, he must

demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. Second, he must demonstrate that the defective performance prejudiced his defense to such a degree that the results of his trial are called into question. Id.

Under the first prong, deficient performance is "that which is objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases." Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990); Brooks v. United States, 248 F. App'x 77, 80 (11th Cir. 2007). The reasonableness of the attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. Strickland, 466 U.S. at 690. The movant must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the

challenged action might be considered sound trial strategy." Id. at 689 (citation omitted).

Under the second prong, McCloud must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Strickland, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The Supreme Court has held that the same Strickland test applies to claims of ineffective assistance of appellate counsel. Murray v. Carrier, 477 U.S. 478, 488 (1986); Smith v. Murray, 477 U.S. 527, 535-36 (1986). In Jones v. Barnes, 463 U.S. 745 (1983), however, the Court held that the Sixth Amendment does not require appellate advocates to raise every nonfrivolous issue. Effective counsel should "'winnow out' weaker arguments even though the weaker arguments may be meritorious." Id. at 751-52. Appellate counsel has no duty to assert every potentially colorable claim of error, even if his client urges him to do so, but instead

should exercise his professional judgment and select only "the most promising issues for review." Id.

With these considerations in mind, the Court will now address each of McCloud's ineffective assistance of counsel claims.

### 1. Ineffective Assistance of Trial Counsel

As noted above, McCloud alleges that his trial counsel performed ineffectively by: failing to object to the sentencing court's imposition of (1) a term of supervised release which exceeded the term referenced during the Rule 11 hearing, and (2) a fine which exceeded the fine recommended in the presentence investigation report. (Doc. 2 at 10-15.) Both claims are meritless.

During the Rule 11 hearing, the sentencing judge advised McCloud that "the maximum sentence that the Court could impose is not more than twenty years' imprisonment, a million dollar fine, *at least* three years of supervised release, and a $100 special assessment." (Cr. Doc. 9 at 30 (emphasis added).) McCloud then acknowledged his understanding of the maximum sentence which could be imposed. (Id.) The imposition of the five-year term of supervised release did not "exceed the statutory maximum" term of

supervised release of which McCloud was advised, as the sentencing judge advised him that he was subject to *at least* three years of supervised release, which indicates the possibility of a longer term of supervised release. Accordingly, McCloud's trial attorney did not perform deficiently by failing to object to the term of supervised release, and McCloud cannot show that he was prejudiced by his attorney's failure to object to the supervised release term.

McCloud's contention that his trial counsel performed ineffectively by failing to object to the sentencing judge's imposition of a $20,000 fine at sentencing is equally unmeritorious. McCloud claims that his trial counsel should have objected to a $20,000 fine, as the probation officer recommended a fine of only $3,000. (Doc. 2 at 14.) But because the sentencing judge was not bound by the recommendation of the probation officer, counsel did not perform ineffectively by failing to object to the $20,000 fine. See United States v. Cobbs, 155 F. App'x 430, 433 (11th Cir. 2005) ("The report made by the probation officer is only a sentencing recommendation."); United States v. Garcia, 35 F.3d 1125, 1133 (7th Cir. 1994); United States v. Blythe, 944 F.2d 356, 361 (7th Cir.

1991) ("a sentencing judge is not bound by the presentence report's recommendations concerning sentence"); United States v. Hutzenlaub, 931 F.2d 894, 894 (6th Cir. 1991).[2] As noted above, the sentencing judge explained to McCloud that the Court could impose a fine of up to one million dollars, and McCloud indicated that he understood the maximum fine which could be imposed. (Id.) The sentencing judge also explained that he was not bound by the sentencing recommendations of defense counsel, the government's counsel, or the probation officer, and McCloud indicated that he understood. (Id. at 33.) In addition, the record shows that McCloud's counsel *did* object to the recommendation in

---

[2] McCloud cites two Fifth Circuit cases for the proposition that the sentencing court should give its reasons for departing from the presentence investigation report's recommendation on fines. (Doc. 2 at 14) (citing United States v. Pattan, 931 F.2d 1035, 1044 (5th Cir. 1991); United States v. Fair, 979 F.2d 1037, 1042 (5th Cir. 1992)). The Eleventh Circuit, however, has held that a sentencing judge is not required to "state on the record that [he] ha[d] explicitly considered each of the [18 U.S.C.] § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Nunez, 202 F. App'x 439, 442 (11th Cir. 2006) (quoting United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005)). "An indication that the district court has considered a defendant's arguments and the § 3553(a) factors is sufficient." Id. Here, the sentencing judge indicated that he had read the presentence investigation report and considered the defendant's objections. (Cr. Doc. 6 at 5-6, 18.) Although the sentencing judge did not mention the § 3553(a) factors during the sentencing hearing, it is clear that those factors were considered. Scott, 426 F.3d at 1329 (citing United States v. Thomas, 446 F.3d 1348, 1357 (11th Cir. 2006) (finding that the district court considered § 3553(a) factors where the parties' arguments and the PSI's calculations outlined them)).

the presentence investigation report that McCloud was able to pay a fine. (PSI Addendum at 4-5.) Accordingly, McCloud's counsel did not perform deficiently by failing to object to the fine imposed. In addition, as the objection to the fine would have been meritless, McCloud was not prejudiced by his counsel's failure to raise it.

### 2. *Ineffective Assistance of Appellate Counsel*

In addition to his claims of ineffective assistance of trial counsel, McCloud asserts that his appellate attorney performed ineffectively by: (1) failing to object to the sentencing court's imposition of a fine which exceeded the fine recommended in the presentence investigation report; (2) failing to order the suppression hearing transcripts and failing to litigate the denial of his suppression motion; (3) failing to assist him in his efforts to provide substantial assistance to the government in order to obtain a Rule 35(b) sentencing reduction; and (4) laboring under a conflict of interest. (Doc. 2 at 15-35.)

McCloud's appellate attorney did not perform deficiently by failing to object to the fine imposed by the sentencing judge. As discussed above, an objection to the fine based upon the sentencing

judge's departure from the fine recommended by the presentence report would have been meritless, as the fine imposed did not exceed the statutory maximum fine to which McCloud understood he could be subjected. As the objection to the fine on appeal would have been meritless, McCloud's appellate attorney did not perform unreasonably by failing to raise it. Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit.").

McCloud next asserts that his appellate counsel performed ineffectively by failing to order suppression hearing transcripts and failing to litigate the denial of his suppression motion. This claim for relief fails, as "a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings." United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003) (citing United States v. Fairchild, 803 F.2d 1121, 1124 (11th Cir. 1986) (per curiam)). A defendant who wants to preserve appellate review of a suppression issue must enter a written conditional guilty plea. United States v. Pierre, 120 F.3d 1153, 1155 (11th Cir. 1997); United States v. Wai-

Keung, 115 F.3d 874, 877 (11th Cir. 1997).[3]  When the district court adopted the report and recommendation on February 23, 2005, McCloud's guilty plea became unconditional.  United States v. Smith, CR404-252 (S.D. Ga. Apr. 28, 2005) (doc. 162).  Because the plea agreement did not preserve McCloud's right to appeal the district court's suppression ruling to the court of appeals pursuant to Federal Rule of Criminal Procedure 11(a)(2),[4] his appellate counsel did not perform ineffectively by failing to appeal the denial

---

[3] McCloud's plea agreement contained the following provision regarding his guilty plea:

> The government consents to the entry of defendant's plea conditioned on the District Court's adoption of the Magistrate Judge's report and recommendation dated January 31, 2005 in which he recommends that the defendant's motion to suppress wiretap evidence be denied.  Should the Court, after considering defendant's objections, not adopt the report and recommendation, then the defendant will be allowed to withdraw his plea of guilty.

(Cr. Doc. 4.)  Contrary to McCloud's assertion, he did not enter "a conditional guilty plea preserving his right to appeal the denial of the motion to suppress as part of the agreement to plead guilty;" rather, his plea was conditioned upon the district court's adoption of the magistrate judge's January 31, 2005 report and recommendation recommending *denial* of the suppression motion. (Doc. 2 at 21); see also United States v. Smith, CR404-252 (S.D. Ga. Apr. 28, 2005) (doc. 142).

[4] Federal Rule of Criminal Procedure 11(a)(2) provides that "[w]ith the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pre-trial motion. A defendant who prevails on appeal may then withdraw the plea."

of his motion to suppress or by failing to order the suppression hearing transcripts.

Finally, McCloud asserts that his appellate attorney, Diane McLeod, labored under a conflict of interest which prevented her from helping him provide substantial assistance to the government in order to receive a Rule 35 sentencing reduction. (Doc. 2 at 34-35.) On June 23, 2008, the Court held an evidentiary hearing regarding McCloud's conflict of interest claim, during which it heard testimony from McCloud and McLeod. Because McCloud's conflict of interest claim and his claim alleging that his appellate attorney failed to assist him in his efforts to provide substantial assistance to the government are so related, the Court will consider them together.

In McCloud's motion, he explains that after becoming dissatisfied with his trial attorney's performance, he contacted attorney Diane McLeod, who agreed to represent him during his appeal. (Id. at 6.) While McLeod was representing McCloud in his federal appeal, she was contemporaneously representing a man named Antonio Allen, a/k/a "Whop," in a related state court

criminal case. (Id. at 34.) McCloud claims that, after sentencing, he decided to attempt to provide substantial assistance to the government in order to receive a Rule 35 sentencing reduction. (Id. at 34, 18-20.) He asserts that he contacted McLeod by writing her two letters describing the information he could provide and asking her to arrange a debriefing with law enforcement officials. (Id. at 34, 18-19.) He claims, however, that McLeod refused to set up such a meeting because the information he sought to provide would further inculpate Allen. (Id. at 34-35.) McCloud maintains that McLeod not only failed to arrange the debriefing, but also "actively misled . . . [him] about her failure to contact law enforcement despite his instruction to do so." (Id. at 35.)

During the evidentiary hearing, the government argued that McLeod did not labor under a conflict of interest and, alternatively, that if she did, McCloud waived his right to conflict-free counsel since he knew McLeod was representing a party who may have interests adverse to his own but retained her anyway.

McCloud testified that about a month and a half after retaining McLeod to represent him,[5] he decided that he wanted to offer assistance to the government in an attempt to secure a Rule 35 sentencing reduction. McCloud testified that he first contacted McLeod regarding his desire to provide assistance to the government via a telephone call in July 2005. He stated, however, that he did not provide much information to her during that phone call as he did not feel he could speak freely with her over the phone because calls from the jail are monitored. McCloud testified that on August 11, 2005, he sent McLeod a letter informing her that he needed to speak with her about providing substantial assistance to the government. (Gov. Ex. 6.) McCloud maintained that he then sent a second letter to McLeod on September 20, 2005, which set

---

[5] McCloud hired McLeod to represent him in the federal case shortly after he was sentenced by the district court. He had, however, twice attempted to retain her services prior to that time. McLeod testified that two weeks prior to McCloud's federal court trial, he asked her to represent him in the federal criminal trial. She declined to represent him at that time because: (1) he contacted her just two weeks prior to the commencement of trial; and (2) she was representing Allen in the state case and thought that there might be a potential conflict of interest, as she knew McCloud was under a separate but perhaps related indictment in state court (both cases involved one common defendant, Kevin Wade). Additionally, McLeod testified that on March 28, 2005, after she had already refused to represent McCloud during the federal trial, he sought to retain her representation in connection with his state court proceedings. Once again, McLeod refused to represent him due to the potential conflict of interest with Allen.

forth specifics about his desire to cooperate with the government, including his desire to provide information about Allen's criminal activities. (Gov. Ex. 7.) After sending the second letter, McCloud asserts that he spoke with McLeod and that she assured him that she had contacted the government regarding his desire to provide assistance. On November 3, 2005, McCloud wrote McLeod a letter expressing his satisfaction with her representation. (Gov. Ex. 8.) McCloud testified that he did not indicate his desire to provide assistance to the government to any of his four state court trial attorneys because he thought that if he assisted in the federal case, it would filter down to help him in his state case.

McLeod testified that she never received the first two letters from McCloud and that she saw them for the first time on the Thursday prior to the evidentiary hearing. She stated that she maintains copies of all correspondence that she receives from her clients and that a search of McCloud's file did not reveal the letters. Additionally, she testified that McCloud never discussed his desire to provide assistance with her, whether regarding his wish to provide information inculpating Allen or anyone else. Finally,

McLeod acknowledged that she would have considered McCloud's desire to provide information inculpating Allen as a conflict of interest. After considering this conflict in the testimony, the Court credits McLeod's testimony that she never received McCloud's letters and that he never discussed his desire to provide substantial assistance with her. McCloud's contrary testimony on these points is rejected as unworthy of belief.

Because the Court credits McLeod's testimony, McCloud's contention that she performed ineffectively by failing to assist him in his efforts to provide substantial assistance to the government is meritless. Since McCloud never communicated his desire to provide assistance to McLeod, she had no duty to seek a substantial assistance reduction in his sentence.

Turning to McCloud's conflict of interest claim, "[t]he Sixth Amendment right to effective assistance of counsel encompasses the right to counsel untainted by conflicts of interest." Lynd v. Terry, 470 F.3d 1308, 1318 (11th Cir. 2006) (citing Cuyler v. Sullivan, 446 U.S. 335 (1980)). "This right is violated when the defendant's attorney has an actual conflict of interest that

adversely affects the lawyer's performance." <u>Cuyler</u>, 446 U.S. at 350. To prove ineffective assistance based upon a conflict of interest, movant must show: "(a) that his defense attorney had an actual conflict of interest, and (b) that this conflict adversely affected the attorney's performance." <u>Reynolds v. Chapman</u>, 253 F.3d 1337, 1342 (11th Cir. 2001) (citing <u>Cuyler</u>, 466 U.S. at 348-49).

In order to establish an actual conflict, movant "must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative causes of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." <u>Smith v. White</u>, 815 F.2d 1401, 1404 (11th Cir. 1987). "A possible, speculative or merely hypothetical conflict does not suffice." <u>Lightbourne v. Dugger</u>, 829 F.2d 1012, 1023 (11th Cir. 1987) (citing <u>Cuyler</u>, 446 U.S. at 350). "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." <u>Cuyler</u>, 446 U.S. at 350.

At the time McCloud hired McLeod, his interests were not inconsistent with Allen's. Allen and McCloud were merely named in separate indictments in state court, each of which named one common codefendant, Kevin Wade. Allen was not named in McCloud's federal information, and therefore at the time McCloud retained McLeod to assist him with his federal direct appeal, he did not have "inconsistent interests" with Allen. Smith, 815 F.2d at 1404. Additionally, because the Court credits McLeod's testimony that McCloud never expressed to her his desire to assist the government by providing information inculpating Allen, an actual conflict of interest never arose in McCloud's case, as McLeod never "actively represented conflicting interests." Cuyler, 446 U.S. at 350. Accordingly, McCloud has not "established the factual predicate for his claim of ineffective assistance." Id.

Even if McCloud could establish that McLeod labored under a conflict of interest, he cannot establish that the conflict adversely affected her performance. Reynolds, 253 F.3d at 1342. McLeod testified that Allen intended to plead guilty from the beginning of his case since the defendant common to his and McCloud's case,

Kevin Wade, was a cooperating witness. Allen pled guilty to the state charges against him on September 30, 2005. (Gov. Ex. 2.) And Agent Michael Sarhatt, the case agent for the United States in McCloud's federal case, testified during the evidentiary hearing that *all* of the defendants named in the state criminal case, aside from McCloud and Wade, have now pled guilty. Because Allen intended to plea guilty from the inception of the state criminal case against him, and actually did plead guilty, there was no need for the information that McCloud sought to provide the government. Thus, even if McLeod's ineffective assistance prevented McCloud from providing information to the government inculpating Allen, he was not harmed by her ineffectiveness in any way.

Lastly, the government argued during the evidentiary hearing that McCloud waived any potential conflict that McLeod may have labored under since he knew that she represented Allen but retained her anyway. The Supreme Court has held that "a defendant may waive his right to the assistance of an attorney unhindered by a conflict of interests." Holloway v. Arkansas, 435 U.S. 475, 483 n.5 (1978) (citing Glasser v. United States, 315 U.S.

60, 70 (1942)); <u>United States v. Campbell</u>, 491 F.3d 1306, 1312 (11th Cir. 2007); <u>United States v. Ross</u>, 33 F.3d 1507, 1524 (11th Cir. 1994) ("Even where an actual conflict exists subjecting the attorney to disqualification, the client may waive this conflict of interest and elect to have the attorney continue representation, so long as that waiver is knowing, intelligent, and voluntary."). In <u>United States v. Rodriguez</u>, 982 F.2d 474, 477 (11th Cir. 1993), the Eleventh Circuit explained:

> A defendant may waive [his right to conflict-free counsel] by choosing to proceed to [appeal] with an attorney who has an adverse conflict of interest . . . . A determination that defendant[] has waived the right to conflict-free counsel disposes of the need to evaluate the actual or potential ineffectiveness of counsel caused by the alleged conflicts of interest. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused.
>
> A defendant's waiver must be established by clear, unequivocal, and unambiguous language. The record should show, in some way, that the defendant was aware of the conflict of interest; realized the conflict could affect the defense; and knew of the right to obtain other counsel.

Id. (citations and quotations omitted); see also Cruz v. United States, 188 F. App'x 908, 911 (11th Cir. 2006); United States v. Garcia, 447 F.3d 1327, 1337 (11th Cir. 2006).

In this case, even if a potential conflict of interest did exist, McCloud waived it by retaining McLeod knowing that she represented Allen in a related state criminal case. During the evidentiary hearing, McCloud testified that, prior to retaining McLeod to represent him during his federal appeal, he was aware that she represented Allen. While awaiting arraignment on his state charges in Chatham County Jail, McCloud discovered that McLeod represented Allen when he saw her come to speak with Allen regarding his state charges. McCloud repeatedly testified that he was aware at that time that he retained McLeod that she was representing Allen in state court proceedings. As Allen was not named as a codefendent in McCloud's federal criminal case, McLeod probably did not perceive any potential conflict of interest arising from her representation of McCloud on his federal direct appeal while simultaneously representing Allen in his state criminal case. McCloud, however, was in a position to know that

his interests might come into conflict with Allen's, as he knew of his relationship with Allen at the time he retained McLeod. Despite his knowledge that his interests might eventually conflict with Allen's, McCloud retained McLeod knowing that she represented Allen. When McCloud decided to provide assistance to the government by inculpating Allen, he doubtlessly realized that his interests had become adverse to Allen's. Both prior to and after the alleged conflict arose, McCloud knew, based on his ample experience with the criminal justice system, that he was free to retain any attorney of his choosing to represent him on direct appeal. By the time he hired McLeod, McCloud had extensive experience with the legal system, having already faced six state charges while represented by attorneys. (PSI at 11-14.) Additionally, during his federal criminal proceedings, he sought to replace his trial attorney with McLeod. Because McCloud was aware of the conflict of interest, realized the conflict could affect his attempt to provide substantial assistance to the government, and knew of the right to obtain other counsel, he waived his right to conflict-free counsel.

## B. Resentencing Based on Vacatur of Prior Convictions

In his final ground for relief, McCloud argues that his "sentence was enhanced based on unconstitutionally obtained prior convictions." (Doc. 2 at 32.) He asserts that he has filed a variety of state actions challenging these convictions and that he "will be entitled to resentencing should a sufficient number of these conviction[s] be vacated." (Id.) He asks this Court to "stay and hold in abeyance the claim that he should be resentenced based on the subsequent vacation or expungement" of his allegedly unconstitutional prior state court convictions. (Id. at 33.) Alternatively, he requests the Court to "dismiss the claim without prejudice and subject to reopening under 28 U.S.C. § 2255¶6(4), provided a sufficient number of [his] state convictions are vacated." (Id.)[6]

Because McCloud does not allege that a sufficient number of his state convictions have been set aside so as to warrant a resentencing at this time, this claim is not yet ripe for review and,

---

[6] McCloud is perhaps asserting this claim at this time in order to ensure that it is not barred by the one-year time limitation period applicable to § 2255 motions.

therefore, must be denied as premature. United States v. Walker, 198 F.3d 811, 812 n.1 (11th Cir. 1999); McCarthy v. United States, 187 F.3d 622, 622 (1st Cir. 1998) (finding the district court did not abuse its discretion by refusing to hold movant's § 2255 motion in abeyance pending the outcome of his state court collateral attacks); Brown v. United States, 483 F.2d 116, 118-19 (4th Cir. 1973); United States v. Venson, 295 F. Supp 2d 630, 633 (E.D. Va. 2003). In the event that McCloud is ultimately successful in getting a sufficient number of his state court convictions invalidated, he may re-file a § 2255 petition insofar as it relates to the instant claim. Stewart v. Martinez-Villareal, 523 U.S. 637, 644 (1998) (recognizing that a claim presented in a habeas petition and dismissed as premature should be adjudicated once it becomes ripe); United States v. Bacon, 94 F.3d 158, 162 n.3 (4th Cir. 1996) (if a movant succeeds in overturning state court convictions, federal law enables him to then seek review of any federal sentence enhanced by his state convictions); United States v. Pettiford, 101 F.3d 199, 201 (1st Cir. 1996) (once movant succeeds in having underlying state court convictions vacated, the career offender

provisions are no longer applicable to his federal sentencing computation and he is entitled to resentencing); United States v. Nichols, 30 F.3d 35, 36 (5th Cir. 1994) (holding that a petitioner who has obtained a vacatur of a state conviction underlying a federal career offender enhancement states a claim for relief under § 2255) (citing Custis v. United States, 511 U.S. 485, 497 (1994)); United States v. Escarria-Montano, 2008 WL 343303, at *1 (M.D. Fla. Feb. 6, 2008) (where a § 2255 claim is premature, it should be dismissed without prejudice and movant may re-file the claim once it becomes ripe); Bazemore v. United States, 2007 WL 2376299, at *1 (S.D. Ga. Aug. 15, 2007) (holding that district court should reopen movant's previous § 2255 motion and remand for resentencing if movant's state court convictions were vacated and he can show his claim was timely and he was diligent in obtaining the vacatur of his prior conviction) (citing Johnson v. United States, 544 U.S. 295 (2006)); Venson, 295 F. Supp. 2d at 634. Because McCloud is entitled to an adjudication of all of the claims presented in this § 2255 motion at the time they become ripe, he will not be required to get authorization from the court of appeals

to file a "second or successive" application before his resentencing claim can be heard by this Court. See Stewart, 523 U.S. at 643-44. In addition, McCloud's motion will still be timely under the statute of limitations provided it is filed within one year of the invalidation of a sufficient number of state convictions to require his resentencing.[7] United v. Catlett, 2008 WL 1699230 at *1 (E.D. Ark. Apr. 9, 2008) ("Assuming that Catlett's state conviction is vacated, the limitation period for seeking relief under § 2255 will begin to run when he receives notice of the order vacating the prior conviction, provided that he was diligent in challenging his state court conviction.") (citing Johnson, 544 U.S. at 310 (movant must act diligently to obtain state-court orders vacating his predicate convictions; once movant succeeds in obtaining a vacatur of his predicate conviction, AEDPA's one-year limitation period runs from the date that he receives notice of the vacatur)).

---

[7] Section 2255 provides, in pertinent part, that "[t]he limitation period shall run from . . . the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4).

## III. CONCLUSION

For the foregoing reasons, McCloud's § 2255 motion should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this  28th  day of July, 2008.

/s/ **G.R. SMITH**
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**